UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

**************************************************

| | |
|---|---|
| EVERTON NOTICE | * |
| *Plaintiff ,* | * |
| | * CIVIL NO. 3:02CV01599 (RNC) |
| VS. | * |
| | * |
| CHANLER LEWIS, INC. | * |
| *Defendants.* | * NOVEMBER 1, 2004 |

**************************************************

### <u>PARTIES' JOINT TRIAL MEMORANDUM</u>

**Trial Counsel**
    For the plaintiff:
    W. Martyn Philpot, Jr., ct05747
    Marc L. Glenn, ct21369
    Law Office of W. Martyn Philpot, Jr., LLC
    409 Orange Street
    New Haven, CT 06511-6406
    Tel. No. (203) 624-4666
    Federal Bar No. ct05747
    Federal Bar No. ct21369
    Email: lawoffice@philpotlaw.net


    For the defendant:
    No Appearance

2

1.    **Jurisdiction**

Jurisdiction in this Court is invoked under the provisions of the Judicial

Code at 28 U.S.C. Sections 1331 and 1343, the *Civil Rights Acts* of 1866,

1964 and 1991, as amended, pursuant to §§1981 and 2000e of Title 42 of the

*United States Code*.

2.    **Jury/Non-Jury**

The instant matter is to be tried to a jury.

3.    **Nature of Case**

A.    **Plaintiff's Nature of Case**

In or about June of 1997, the plaintiff began working for the defendant

as a milling machine operator, earning approximately $13.00 per hour.  Two

years later, the plaintiff was moved to an assembly area.  In September of 1999,

the plaintiff was laid off for approximately nine (9) months and returned to work

on or about July 3, 2000. Upon his return to work in July of 2000, he continued

to work in theassembly area, but his pay was unfairly reduced from $13.00 per

hour to $11.00 per hour.  Moreover, upon his return to work, he filled out

paperwork to reinstate his health insurance and gave the forms to the office

bookkeeper.  Following this, periodic deductions were taken from

each of plaintiff's paychecks by way of a co-payment for health insurance.

However, when plaintiff attempted to avail himself and his family of the health

3

insurance for which he was being charged, he was told it was not valid.

On or about May 12, 2001, Tom Officer, the president of Chanler Lewis, Inc., (hereinafter referred to as the "President"), told the plaintiff he was working too slow and sent him home telling him to return on the following Monday.  At that time, he was earning approximately $11.57 per hour.  Plaintiff was working slowly on the aforementioned date because he had an upset stomach. When he returned on Monday, May 14, 2001 his supervisor told him that he had been advised that the President had fired him.  The plaintiff immediately went to speak with his shop steward, Paul Bealieu, ("Bealieu"), who in turn, went to speak with the President.  When he returned, Bealieu told the plaintiff he should go in and speak to the President. When the plaintiff inquired about why he never received any verbal and/or written warning concerning his job performance, as other white of color, Caucasian employees had previously, the President just stated that "it was not in the contract."  A few days later, the plaintiff telephoned his Union Representative, Tim Sullivan, ("Sullivan") who stated what, "what goes for one, goes for all" and said he would speak to the defendant's President.  Following this, the plaintiff received a letter from Sullivan explaining that he had reached a settlement on the plaintiff's behalf and that as soon as a position was available, he could come back to work.  The plaintiff never received notice of any grievance hearing.

The plaintiff began looking for work elsewhere and after applying for a job at Queen Anne Woodworking was told that its representatives had been informed by agents, servants and/or employees of the defendant, that he was a poor

4

worker and "a thief."

Other white, Caucasian employees who were similarly situated to the plaintiff have never been subjected to the harassment, hostile work environment, and/or disparate treatment visited upon the plaintiff by the defendant, through its agents, servants and/or employees.

The demeaning and harrasive conduct of the agents, servants and/or employees of the defendant towards the plaintiff, in juxtaposition to their treatment of other Caucasian, white employees, constituted disparate discriminatory treatment and, accordingly, was illegal.

The actions of the defendant, through its agents, servants and/or employees in creating a hostile work environment, and thereafter terminating the plaintiff, caused the plaintiff to suffer severe emotional, psychological, financial and physical injuries and damages stemming from the wrongful acts of the defendant's agents, servants and/or employees as aforecited, all to his permanent detriment and loss.

The plaintiff has satisfied all statutory conditions precedent to bringing the instant causes of action by exhausting all applicable administrative remedies.

The aforedescribed conduct of the defendant, through its agents, servants and/or employees were motivated, at least in substantial part, by plaintiff's color which is black, and his national origin which is Jamaican.

5

B.   Defendant's Nature of the Case.

4.    Stipulations of Fact and Law

A.    Stipulations:

1.    The Plaintiff commenced employment in June 1997 and was terminated on May 14, 2001.

2.    The Plaintiff is black of color and Jamaican of national origin.

3.    The plaintiff was not warned of any performance problems prior to his discharge of May 14, 2001.

5.    Plaintiff's Contentions

1.    Other similarly situated white of color and non-Jamaican employees have received verbal or written warning regarding their job performance, but the plaintiff was not due to his color and ethnicity.

2.    The defendant's president falsely referred to the plaintiff as "a thief".

3.    The plaintiff was subjected to a hostile work environment, wrongful discharge and retaliation by the defendant's agents, servants and/or employees.

6

6.    Defendant's Contentions

7.    Legal Issues

A.    Plaintiff's Statement

1.    The defendant's actions, through its agents, servants and/or employees, by fostering a hostile work environment and discriminatory treatment of the plaintiff, violated his civil rights pursuant to 42 U.S.C. §§ 1981 and 2000e.

2.    The defendant wrongfully discharged the plaintiff in counterclaim of its own progressive discipline policy and in retaliation for plaintiff complaining about being discriminated again.

3.    The defendant, through its agents, servants and/or employees, retaliated against the plaintiff for filing a CHRO complaint against, in violation of 42 U.S.C § 2000e.

4.    The defendant's conduct, through its agents, servants and/or employees caused the plaintiff to suffer both intentional and negligent infliction of emotional harm.

5.    The defendant was recently bought by another company.  It may well be necessary to have the new company, Monarch Industries, Inc. substituted for the previously named defendant.

7

B.    Defendant's Statement

9.    Voir Dire Questions

The Plaintiff Proposed Voir Dire Questions are being filed separately and accompany this Memorandum.

10.    List of Witnesses

A.    Plaintiff's List of Witnesses

1.    Everton Notice
      107 Rose Street
      Waterbury, CT 06704

Everton Notice will testify that he was repeatedly discriminated against due to his national origin, race and color with regard to promotional opportunities within the defendant.  Moreover, he will testify as to the hostile work environment, disparate treatment and pattern and practice of discrimination he has observed and experienced at the defendant, which resulted in his wrongful discharge.

8

    2.      Paul Campbell
            112 Pratt Street
            Winsted, CT

Paul Campbell will testify as to the discriminatory circumstances surrounding the termination of the plaintiff from the defendant. As a former supervisor for the defendant, Mr. Campbell will also testify that the plaintiff was a good worker who was subjected discriminatorily to a hostile work environment and disparate treatment.

Plaintiff reserves the right to call any witnesses listed by the defendant in its case-in-chief. Moreover, plaintiff reserves the right to supplement this list in light of any evidentiary rulings issued by the Court during the course of trial.

    3.      Winsome Notice
            107 Rose Street
            Waterbury, CT 06704

Ms. Notice will testify as to her observations of the devastating and emotional impact the firing of the plaintiff had on him and their marriage.

9

4.    Herbert Hanke
       Address Unknown

Mr. Hanke will indicate that during his employment with the defendant, he received numerous verbal and/or written notices regarding his job performance, but for which he was never fired.

5.    Robert Nield, MCUS
       Social Worker
       1875 Thomaston Avenue

       Waterbury, CT 06704

Mr. Nield will testify about the psychological and emotional trauma suffered by the plaintiff as a result of defendant's hostile work environment and wrongful discharge of him.

6.    Lloyd Taylor
       Address Unknown

Mr. Taylor will testify as to the circumstances surrounding plaintiff's discharge, his work attendance and the policies and past practices of the defendant.

10

7.    Dr. Fienberg
      714 Chase Parkway
      Waterbury, CT

Dr. Fienberg will testify about the physical and emotional problems plaintiff experienced subsequent to his termination and that they were causally related.


11.    Exhibits

A.    Plaintiff's Exhibits

1.    The Collection Barging Agreement between the carperters Local Union 24 and the defendant.

2.    Tax returns of the plaintiff for the years of 1998, 1999, 2000 and 2001.

3.    Periodic paystubs of the plaintiff from 1998 through May 2001

4.    Certain documents from plaintiff's personnel file while employed by the defendant.

5.    Medical records and social worker's reports and notes regarding treatments of the plaintiff by Mr. Nield and Dr. Fienberg.


Plaintiff reserves the right to utilize any exhibits listed by the defendant in

11

her case-in-chief.  Moreover, plaintiff reserves the right to supplement this list in light of any evidentiary rulings issued by the Court during the course of trial.

### B.    Defendant's Exhibits

### 12.    Deposition Testimony

The plaintiff does not intend to submit any deposition testimony as an exhibit at trial, but reserves the right to introduce such evidence as follows:  (1) In the event the opposing party raises evidentiary objections which require the introduction of deposition testimony in response; or (2) for purposes of impeachment.

### 13.    Requests for Jury Instruction

The plaintiff will submit his proposed jury instructions to the Court separately

### 14.    Anticipated Evidentiary Problems

### A.    Plaintiff

12

The plaintiff may need to cite in the successor company, Monarch Industries, Inc. which purchased the defendant..

### B.    Defendant

**15.    Proposed Findings and Conclusions**

    a.    That the defendant, through its agents, servants and/or employees, created a hostile work environment in which the plaintiff was forced to endure, due to his color and ethnicity, in violation of 42 U.S.C. §§1981 and 2000e.

    b.    That the defendant, through its agents, servants and/or employees, retaliated against the plaintiff for his filing an EEOC/CHRO Complaint Affidavit, in violation of 42 U.S.C. §2000e.

**16.    Trial Time**

The Plaintiff anticipates that this case will consume approximately two days of trial time.

**17.    Further Proceedings**

**18.    Election for Trial by Magistrate.**

The plaintiff has not consented to trial by a Magistrate Judge.

13

PLAINTIFF, EVERTON NOTICE

BY:_____

W. Martyn Philpot, Jr.

Law Office of

W. Martyn Philpot, Jr., LLC

409 Orange Street

New Haven, CT 06511

Tel. (203) 624-4666

Federal Bar No. ct05747

His Attorneys

Email: lawoffice@philpotlaw.net

**CERTIFICATION**

*THIS IS TO CERTIFY* that a copy of the foregoing was mailed, postage prepaid,  this 1st day of November, 2004, first class postage prepaid, to:

_____

W. Martyn Philpot, Jr.

\employ\notice.jtm

14

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

*****************************************

EVERTON NOTICE                      *

    *Plaintiff,*   *

          * CIVIL NO. 3:02CV01599 (RNC)

VS.                                 *

          *

CHANLER LEWIS, INC.                 *

    *Defendant*  * NOVEMBER 1, 2004

*****************************************

## PLAINTIFF'S PROPOSED VOIR DIRE QUESTIONS

  1.  Do any of you know any of the parties involved in the instant matter, anyone who works or worked for Chanler Lewis, Inc., any of the attorneys representing the parties and if so, would this knowledge affect your ability to serve as a fair and impartial juror in this matter?

  2.  Do any of you know of or ever heard of any of the witnesses who are expected to testify in the upcoming trial of this case? If your answer is in the affirmative, would your familiarity with any of the witnesses affect your ability to be a fair and impartial juror in this matter?

  3.  There has been a great deal of talk in the media of late

15

about frivolous lawsuits and possible caps on claims brought by plaintiffs in our courts.  Whether or not you agree with this proposition, will you be able to follow the law as provided to you by this Court regardless of your own feelings as to whether or not there are too many frivolous lawsuits in Courts and/or whether or not damages should be capped in certain types of cases?

4.     If you find that Mr. Notice has proven his case by a fair preponderance of the evidence, will you have any hesitation in awarding him just, fair and reasonable damages in accordance with the law as I so instruct?

5.     Often times, people have indicated difficulty in awarding money damages for such things as pain and suffering, and/or discrimination, even when they have found that such damages are justly deserved.  If you find that the plaintiff has proven his damages by a preponderance of the evidence, will you be reluctant to award just, fair and reasonable damages for such intangible things as pain and suffering, humiliation, embarrassment and loss of enjoyment of life?

6.     Evidence of damages in this case will involve a diagnosis of anxiety and stress.  Many people are skeptical of this type of illness

16

or injury.  If plaintiff proves his injuries by a preponderance of the

evidence, and that they are related to the discrimination he experienced

at the hands of then defendant, will you have any hesitation whatsoever in

awarding reasonable damages for these types of injuries?

17

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

*****************************************

EVERTON NOTICE                        *

         *Plaintiffs,*      *

                                                       * CIVIL NO. 3:02CV01599 (RNC)

V.                                    *

                                                       *

CHANLER LEWIS, INC.                   *

         *Defendants.* * NOVEMBER 1, 2004

*****************************************

### PLAINTIFF EVERTON NOTICE'S PROPOSED JURY INSTRUCTIONS

      The plaintiff, Everton Notice, hereby respectfully requests the following jury charge be given to the jury in the instant matter, subject to any further instructions and/or rulings by the Court with respect to the evidence admitted and/or the general charge which is to be rendered by the Court in the instant matter.

**Request to Charge No. 1.    Defining Title VII**

      42 U.S.C. §2000e-2(a), also known as Title VII, provides that:

It shall be an unlawful employment practice for an employer    (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion,  sex or national origin; or (2) to limit, segregate or classify his employees or applicants for

18

employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee because of such individual's race, color, religion, sex or national origin.

42 U.S. §2000e-2(a).

### Request to Charge No. 2.  Evidence of Race Discrimination

Plaintiff may prove that the defendant's fostering of a hostile work environment and his subsequent discharge was "because of" his ethnicity and color by showing that his color and Jamaican descent played a motivating role in, or contributed to, the employer's decision.

Plaintiff may prove that the aforementioned forbidden animus was a motivating factor through presentation of either "direct" or "circumstantial" evidence.  This is in addition to the *McDonnell Douglas* indirect or burden-shifting method of proof.

*Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

### Request to Charge No. 3.  Discriminatory Animus – Different Treatment

A plaintiff under Title VII may raise an inference of discriminatory animus by offering evidence comparing himself to similarly situated individuals who are not a member of that protected class, who are treated more favorably.

*Morris v. Harris Trust & Savs. Bank*, 867 F.2d 1023, 1026 (7th Cir. 1989);

19

*Lanear v. Safeway Grocery*, 843 F.2d 298, 301 (8th Cir. 1988).


**Request to Charge No. 4.     Qualified for Position**

To be considered "qualified" for a position, Plaintiff must show that his work was sufficient to meet his employer's legitimate expectations.  I charge you that the evidence here is that the plaintiff was qualified for her position as either a Milling Machine Operator or an Assembler.

*Bramble v. American Postal Workers Union*, 135 F.3d 21, 25 (1st Cir. 1998 (citing *Mesnick v. General Elec. Co.*, 950 F.2d 816, 823 (1st Cir. 1991), *cert. denied*, 504 U.S. 985 (1992)).


**Request to Charge No. 5.    Adverse Employment Action**

An adverse employment action is one that results in discrimination against an individual with respect to his compensation, terms, conditions or privileges of employment or that limits, segregates, or classifies employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect her status as an employee.

Title VII of the Civil Rights Act of 1964, as amended,  § 703(a), 42 U.S.C. §2000e-2(a) (1997).  *See* § 3:130.

20

**Request to Charge No. 6.    Determining/Motivating Factor**

To determine whether an employer intentionally discriminated against an employee under Title VII, you must decide whether color and/or ethnicity accounted for the employer's decision to harbor a hostile work environment or discharge the plaintiff.    In other words, you must decide whether the same events would have transpired if the employee had been a different race, i.e., white, and everything else had been the same.

*Gehring v. Case Corp.*, 43 F.3d 340, 344 (7th Cir. 1994).

**Request to Charge No. 7.  Adverse Action**

Generally, a demotion, salary decrease, undesirable reassignment, failure to promote or termination constitutes an adverse employment action.  I instruct you that retaliatory and/or discriminatory conduct may consist of an action "less severe than outright discharge."

*Kim v. Nash Finch Co.*, 123 F.3d 1046, 1060 (8th Cir. 1997).

**Request to Charge No. 8.  Causation**

To succeed on claims of retaliatory harassment, Plaintiff must establish the basic fact that he was subjected to an adverse employment action because of his complaining about discrimination in the workplace.  At a minimum, there must be competent evidence that the alleged retaliators knew of Plaintiff's

21

protected activity and that a retaliatory motive played a part in the adverse employment actions alleged.

*Lewis v. Gillette Co.*, 22 F.3d 22, 24 (1st Cir. 1994).


### Request to Charge No. 9.  Hostile Work Environment

To establish the existence of a hostile work environment, the plaintiff must show that his workplace was permeated with "discriminatory intimidation, ridicule and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."

*Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993).  Whether an environment is "hostile" or "abusive" depends on the totality of the circumstances. *Harris*, 510 U.S. at 23.


### Request to Charge No. 10.  Negligent Infliction of Emotional Distress

Connecticut courts have held that a defendant will be held liable for negligent infliction of emotional distress if it is determined that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that distress, if it were caused, might result in illness or bodily harm.  Further, if you determine that the failure to promote the plaintiff constituted extreme and outrageous conduct, in other words egregious conduct, wholly unreasonable and beyond all bounds of decency,  I instruct you that the

22

plaintiff has met her burden of establishing that she suffered the negligent infliction of emotional distress.

*Montineri v. Southern New England Telephone Co.*, 175 Conn. 337, 345 (1978); *Jaworski v. Keenan*, 241 Conn. 399 (1977).

**Request to Charge No. 11.    Calculation of Damages**

If you find in favor of Mr. Notice under any of his claims of discrimination, then you must award him such sum as you find by the preponderance of the evidence will fairly and justly compensate him for any damages you find he sustained as a direct result of defendant's harassing of a hostile work environment, wrongful discharge and/or retaliate against him.  Plaintiff's claims for damages include, but are not limited to such things as:

1.    Lost income;

2.    Physician bills;

3.    Any and all damages sustained by plaintiff, such as future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, as well as other non-pecuniary losses.

You must enter separate amounts for each type of damages in the verdict form and must not include the same items in more than one category.  Remember, throughout your deliberations, you must not engage in any speculation, guessing

23

or conjecture and you must not award damages under this charge as a result of sympathy. *Model Jury Instructions (Civil)*, 8th Cir. §5.02 (1998).


**Request to Charge No. 12.    Calculation of Damages**

You must use sound discretion in fixing an award of damages, drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence.  You should consider the following elements of damages, to the extent you find them proven by a preponderance of the evidence:  If you find for plaintiff, then he is entitled to recover any amount that will fairly compensate him for the damages that he has suffered to date.

In addition, if you find that plaintiff was reasonably certain to suffer damages in the future from his injuries, then you should award him the amount you believe would fairly compensate him for such future damages.  In calculating future damages, you should also consider the age at which plaintiff will likely retire.

*McDonnell v. ISK Biosciences, Inc., CA* No. H-95-4730 (S.D. Texas 1999).


**Request to Charge No. 13.    Compensatory Damages**

If you find the defendant  is liable to Mr.  Notice under Title VII, plaintiff is also entitled to recover damages in an amount which will reasonably compensate him for the loss and injuries suffered as a result of its unlawful conduct.  You may award plaintiff reasonable compensation for the following:

24

1.    Pain, suffering and physical and/or emotional distress;

2.    Embarrassment and humiliation;

3.    Loss of enjoyment of life, that is Mr. Notice's loss of the ability to enjoy certain aspects of her life as a result of defendant's discriminatory actions; and

4.    Any out-of-pockets expenses or losses incurred as a result of the unlawful discrimination.

In the determination of the amount of the award, it will often be impossible for you to arrive at a precise award.  These damages are intangible and it is, therefore, difficult to arrive at a precise evaluation of actual damages for emotional harm from discrimination.  I charge you that it is not necessary for you to hear an opinion of any witnesses as to the amount of such compensation. Nonetheless, it is necessary to arrive at a reasonable award that is supported by the evidence.

*EEOC Policy Guide on Compensatory and Punitive Damages Under 1991 Civil Rights Act*, (BNA 1992) at II(A)(2), as modified.


**Request to Charge No. 14.    Punitive Damages**

In addition to the damages mentioned in the other instructions, the law permits you, under certain circumstances, to award an injured person such as Everton Notice punitive damages in order to punish the defendant for some

25

extraordinary misconduct and to serve as an example or warning to others not to engage in such conduct. If you find in favor of Everton Notice, that she was indeed the subject of discrimination, and that the defendant was responsible for its unreasonable continuation and that you find that the defendant acted with reckless indifference to Mr. Notice's right not to be discriminated against on the basis of his ethnicity and color, then in addition to any damages to which you find plaintiff entitled, you may award plaintiff an additional amount as punitive damages. In so finding, you must determine that it is appropriate to punish the defendant or to deter it and/or others from like conduct in the future. Whether to award Mr. Notice punitive damages, and the amount of those damages, are within your sound discretion.

**Request to Charge No. 15.    Back Pay**

If you find that Mr. Notice was the victim of racial discrimination, then he is entitled to a back pay differential based upon what he would have been making presently had he not been improperly and illegally discharged in May of 2001. .

*Model Jury Instructions (Civil)*, 8th Cir. §5.02 (1998).

26

# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| EVERTON NOTICE | \* |
| *Plaintiffs,* | \* |
| | \* CIVIL NO. 3:02CV01599 (RNC) |
| VS. | \* |
| | \* |
| CHANLER LEWIS, INC. | \* |
| *Defendants.* | \* NOVEMBER 1, 2004 |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## PROPOSED JURY VERDICT FORM

### PLAINTIFF'S CAUSE OF ACTION – TITLE VII

1.    DID PLAINTIFF EVERTON NOTICE PROVE THAT DEFENDANT CHANLER LEWIS, INC. VIOLATED HIS RIGHT TO BE FREE FROM DISCRIMINATION IN EMPLOYMENT ON THE BASIS OF NATIONAL ORIGIN AND COLOR?

YES \_\_\_\_\_    NO_____

IF THE ANSWER TO THE PRECEDING QUESTION IS NO, PROCEED NO FURTHER.

2.    IF THE ANSWER TO THE PRECEDING QUESTION IS YES, WHAT, IF ANY, AMOUNT OF MONEY DID PLAINTIFF EVERTON NOTICE PROVE WILL FAIRLY AND REASONABLY COMPENSATE HIM FOR FINANCIAL LOSSES, KEEPING IN MIND ANY INSTRUCTION ON DAMAGES?

$ _____

27

3.    IF THE ANSWER TO QUESTION 1 IS YES, DO YOU FIND THAT THE
        DEFENDANT CHANLER LEWIS, INC. ACTIONS IN DISCRIMINATING
        AGAINST THE PLAINTIFF EVERTON NOTICE BECAUSE OF HIS RACE
        WERE WILLFUL?

YES _____    NO _____

4.    DID PLAINTIFF EVERTON NOTICE PROVE THAT A VIOLATION OF HIS RIGHT
        TO BE FREE FROM DISCRIMINATION IN EMPLOYMENT ON THE BASIS
        OF HIS NATIONAL ORIGIN AND COLOR WAS THE PROXIMATE CAUSE
        OF ANY MENTAL, PHYSICAL OR EMOTIONAL DISTRESS SUSTAINED
        BY HIM?

YES _____    NO _____

5.    IF THE ANSWER TO THE PRECEDING QUESTION IS YES, WHAT, IF ANY,
        AMOUNT OF MONEY DID PLAINTIFF EVERTON NOTICE PROVE WILL
        FAIRLY AND REASONABLY COMPENSATE HIM FOR MENTAL,
        PHYSICAL AND EMOTIONAL DISTRESS?

$ _____

6.    IF PLAINTIFF EVERTON NOTICE HAS FAILED TO PROVE ACTUAL DAMAGES,
        THEN DO YOU FIND AN AWARD OF ONE DOLLAR IN NOMINAL
        DAMAGES APPROPRIATE?

YES _____    NO _____

28

**<u>CERTIFICATION</u>**

I HEREBY CERTIFY THAT THE FOREGOING PROPOSED JURY INSTRUCTIONS, WITH

ACCOMPANYING JURY VERDICT FORM, WAS SERVED THIS      DAY OF NOVEMBER, 2004,

BY FIRST CLASS MAIL, POSTAGE PREPAID, TO:


AND A COURTESY COPY WAS PROVIDED TO THE CHAMBERS OF THE HONORABLE

ROBERT C. CHATIGNY .


_____

W. MARTYN PHILPOT, JR.

29